UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

NANCY GAGNON, Individually and On
Behalf of All Others Similarly Situated,

                Plaintiff,           17cv9178

                -against-           MEMORANDUM & ORDER

ALKERMES PLC, RICHARD F. POPS, and
JAMES M. FRATES,

                Defendants.

---------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

        On March 28, 2019, this Court issued an Opinion & Order (the "March 28 Opinion & Order") dismissing the Second Amended Complaint (the "Complaint") with prejudice for failure to state a claim. Lead Plaintiff Local 731 I.B. of T. Private Scavenger and Garage Attendants Pension Trust Fund ("Local 731") now moves for partial reconsideration of the March 28 Order under Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3. For the reasons that follow, Local 731's motion is denied.

## BACKGROUND

        The underlying facts are more fully set forth in the March 28 Opinion & Order, familiarity with which is presumed. See Gagnon v. Alkermes PLC, 368 F. Supp. 3d 750 (S.D.N.Y. 2019). In brief, Alkermes is a pharmaceutical company that produces an opioid dependence medication called Vivitrol. Local 731 alleges that the value of Alkermes stock progressively declined amid a wave of media and governmental scrutiny into Alkermes' efforts to market Vivitrol. According to Local 731, the publication of two academic articles finding Vivitrol to be—at best—no more effective than its competitors further exacerbated the drop in

Alkermes' stock price.

Local 731 premises its securities fraud claims on three categories of misstatements by Alkermes' officers. See Gagnon, 368 F. Supp. 3d at 760-61. First, it alleges that Alkermes falsely characterized Vivitrol's success as organic and self-propagating without disclosing its aggressive and deceptive campaign to market Vivitrol to members of the criminal justice system—that is, policymakers and stakeholders who likely lacked the medical knowledge to understand Vivitrol's limitations vis-à-vis its competitors. Second, Local 731 contends that Alkermes misrepresented Vivitrol's efficacy by guaranteeing that patients who had been treated with Vivitrol would not relapse, despite internal studies suggesting the contrary. Finally, it avers that Alkermes falsely—and without any scientific basis—represented that only Vivitrol (and not its competitors) could lead to a drug-free life.

Defendants moved to dismiss Local 731's claims on falsity and scienter grounds. After culling the documents submitted in connection with Local 731's motion to dismiss,[1] this Court held that the majority of the statements proffered by Local 731 were not actionable as a matter of law. Gagnon, 368 F. Supp. 3d at 766-71. As relevant here, the March 28 Opinion & Order determined that in context, the statements that Vivitrol patients "will not" or "cannot" relapse to opioid dependence could not be fairly understood as guarantees against any potential relapse, but rather as representations about how Vivitrol was expected to work. Gagnon, 368 F. Supp. 3d at 769-70. On the other hand, this Court found a July 28, 2016 statement by Defendant James M. Frates attributing Vivitrol's sales growth to Alkermes' "focus on criminal justice programs" and "organic growth within the states" to be actionable half-truths based on Alkermes' purported concealment of the nature of its aggressive marketing efforts to the criminal

---

[1] Local 731 does not seek reconsideration of this aspect of the March 28 Opinion & Order. See Gagnon, 368 F. Supp. 3d at 762-74.

justice community.  Gagnon, 368 F. Supp. 3d at 767-69.

Nonetheless, the March 28 Opinion & Order granted Defendants' motion to dismiss in full based on Local 731's failure to allege a strong inference of scienter with respect to the July 28, 2016 statement.  This Court first rejected Local 731's allegations of stock sales by Alkermes' directors and officers as insufficient to demonstrate a motive to defraud.  Gagnon, 368 F. Supp. 3d at 772-73.  Local 731's allegations were also inadequate to show conscious misbehavior or recklessness by any individual whose state of mind could be imputed to the company.  Gagnon, 368 F. Supp. 3d at 773-75.  Finally, this Court explained that the July 28, 2016 statement was not so "important and dramatic" as to warrant a finding of corporate scienter notwithstanding Local 731's inability to pin scienter on a specific individual defendant.  Gagnon, 368 F. Supp. 3d at 775-76 (citing, inter alia, Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 195-96 (2d Cir. 2008)).  And based on the lack of a primary violation of the federal securities laws, this Court dismissed Local 731's Section 20(a) claim. Gagnon, 368 F. Supp. 3d at 776.

## DISCUSSION

I.     Legal Standard

The standard for reconsideration "is strict, and ultimately, the decision is within the sound discretion of the trial court."  McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018); see also U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (describing reconsideration as "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources" (citation omitted)).  Judges in this district have routinely recognized that the standards governing a motion to amend or alter a judgment under Rule 59(e) and

motions for reconsideration under Local Civil Rule 6.3 are the same.  E.g., In re Facebook, Inc., IPO Secs. & Derivative Litig., 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014).

It is well-settled that a motion for reconsideration is not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citations and quotation marks omitted); see also Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (explaining that motions to reconsider "should not be granted where the moving party seeks solely to relitigate an issue already decided").  Such a motion "cannot assert new arguments or claims which were not before the court on the original motion" to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision then plugging the gaps of a lost motion with additional matters.'"  McGraw-Hill Glob. Educ. Holdings, LLC, 293 F. Supp. 3d at 397 (citation omitted).  In other words, a motion for reconsideration is "not an invitation for parties to 'treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.'"  McGraw-Hill Glob. Educ. Holdings, LLC, 293 F. Supp. 3d at 397 (citation omitted).

Thus, a motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader, 70 F.3d at 257.  The movant may satisfy its burden by demonstrating, for example, "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  U.S. Bank Nat'l Ass'n, 352 F. Supp. 3d at 246 (quotation marks omitted) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d

4

1245, 1255 (2d Cir. 1992)).

II. Application

Local 731 seeks partial reconsideration of the March 28 Opinion & Order on two grounds—namely, that this Court erred in holding one category of alleged misstatements to be non-actionable and finding the Complaint's scienter allegations insufficient with respect to the sole statement that this Court found to be actionable. This Court addresses each ground in turn.

A. Vivitrol Efficacy Statements

Local 731 contends that this Court erred in finding the statements relating to Vivitrol's efficacy non-actionable. Specifically, Local 731 asserts that instead of adopting its interpretation of the Vivitrol efficacy statements, this Court improperly read those statements in Defendants' favor. It argues, moreover, that in doing so, the March 28 Opinion & Order implicitly (and erroneously) concluded that Defendants had established a truth-on-the-market defense.

As an initial matter, Local 731's suggestion that this Court effectively found that Defendants established a truth-on-the-market defense misunderstands the March 28 Opinion & Order. Under the truth-on-the-market doctrine, "a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market." Ganino v. Citizens Utils. Co., 228 F.3d 154, 167 (2d Cir. 2000). To raise such a defense, a defendant must show that the corrective information is "conveyed to the public 'with a degree of intensity and credibility to counter-balance effectively any misleading information created by' the alleged misstatements." Ganino, 228 F.3d at 167 (citation omitted). And because the "truth-on-the-market defense is intensely fact-specific," the Second Circuit has cautioned that it "is rarely an appropriate basis for dismissing a § 10(b) complaint for failure to

5

plead materiality." Ganino, 228 F.3d at 167.

Fair enough—but the March 28 Opinion & Order never addressed the materiality of the Vivitrol efficacy statements, only finding them to be non-actionable as a matter of law.[2] Put differently, the relevance of the FDA labels is "not to show that plaintiffs knew the truth" in the contents of the labels. Accord City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173, 186 n.62 (2d Cir. 2014) (emphasis removed) (rejecting argument that district court "impermissibly considered a 'truth on the market' defense"). Rather, as this Court explained, the reference to the FDA labels and the uses for which Vivitrol was approved or indicated add important context to the nature of the Vivitrol efficacy statements. Gagnon, 368 F. Supp. 3d at 770. Thus, the March 28 Opinion & Order had no occasion to consider the intensity and credibility of the disclosure of the content in the FDA labels for the truth-on-the-market inquiry.

Nor did the March 28 Opinion & Order impermissibly draw inferences in Defendants' favor merely by categorizing the Vivitrol efficacy statements as non-actionable statements of expectation, a determination that buttressed dismissal of the action. Cf. Ong v. Chipotle Mexican Grill, Inc., 329 F.R.D. 43, 53 (S.D.N.Y. 2018) (explaining that "already decided legal issues cannot be relitigated because of 'a mere disagreement with the Court's legal determination'" (quoting Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co., 2011 WL 1347001, at *1 (S.D.N.Y. Apr. 4, 2011))). More to the point, a plaintiff cannot simply use the motion to dismiss standard to transform a non-actionable statement into an actionable statement by peddling an implausible reading shorn of context. Cf. Solmetex, LLC v. Dental Recycling of

---

[2] Likewise, to the extent that the truth-on-the-market doctrine is more accurately conceptualized as a defense to reliance, see Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc., 879 F.3d 474, 485-86 (2d Cir. 2018), the ruling as to the Vivitrol efficacy statements is not premised on any lack of reliance on those statements.

6

N. Am., Inc., 2017 WL 2840282, at *4 (S.D.N.Y. June 26, 2017) ("While the Court must accept the well-plead[ed] allegations in the pleadings as true, [a plaintiff] cannot plead falsity by quoting statements out of context.").

Ultimately, Local 731 points to no new evidence or change in controlling law that this Court overlooked. Indeed, Local 731's argument that this Court failed to construe all reasonable inferences in its favor merely evinces its disagreement with this Court's interpretation of the Vivitrol efficacy statements and its application of the settled motion to dismiss standard. In substance, the thrust of its argument on reconsideration is that this Court should have found the Vivitrol efficacy statements to be actionable because they were false promises of guaranteed effectiveness—that is, an argument that this Court already considered and rejected in concluding that no reasonable investor could plausibly recognize them as such in the context in which they were made. See Gagnon, 368 F. Supp. 3d at 770.

However, a motion for reconsideration is "not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." In re Facebook, 43 F. Supp. 3d at 373-74 (quoting In re Bear Stearns Cos. Sec., Derivative & ERISA Litig., 2009 WL 2168767, at *1 (S.D.N.Y. July 16, 2009) (quotation mark omitted)). In other words, a party's assertion that a court misapplied controlling law "is a ground for appeal, not reconsideration." Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 609 (S.D.N.Y. 2012); see In re Currency Conversion Fee Antitrust Litig., 2005 WL 1705285, at *3 (S.D.N.Y. July 22, 2005) (explaining that mere disagreement with a court's ruling is an insufficient ground for reconsideration). Accordingly, Local 731's motion to reconsider the actionability of the Vivitrol efficacy statements is denied, and this Court need not reach the question of whether Local 731 plausibly alleged that those statements were made with scienter.

B. Corporate Scienter

Local 731 also takes issue with the determination that it did not plausibly allege a strong inference of scienter with respect to Frates' July 28, 2016 statement. It points to allegations that (1) in 2016, Alkermes circulated a white paper attacking one of Vivitrol's competitors; and (2) sometime between 2011 and 2014, a former state public health official held a meeting with unidentified individuals at Alkermes to stop the company from denigrating Vivitrol's competitors to legislators. Local 731 submits that the importance of Vivitrol to Alkermes' revenue growth and the information suggesting that Frates' July 28, 2016 statement was misleading sufficiently demonstrate scienter.

Local 731's second ground for reconsideration fails for substantially the same reasons as its first. To start, Local 731 does not fault this Court with overlooking the applicable standard set forth in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007). Rather, Local 731 asserts this Court misapplied the Tellabs standard. See Sikhs for Justice, 893 F. Supp. 2d at 609; In re Currency Conversion Fee Antitrust Litig., 2005 WL 1705285, at *3. Indeed, Local 731's arguments and the allegations on which it relies were squarely addressed—and rejected—by the March 28 Opinion & Order. See Gagnon, 368 F. Supp. 3d at 774-75. As this Court explained, the facts pled in the Complaint do not plausibly allege that Frates—or anyone with knowledge imputable to Alkermes—knew of or had access to the information identified by Local 731. Gagnon, 368 F. Supp. 3d at 774-75. In doing so, this Court contrasted cases that found a strong inference of scienter based on specific factual allegations supporting an inference of knowledge or access, not mere conclusory allegations that defendants knew of and recklessly disregarded information contradicting their public statements. Gagnon, 368 F. Supp. 3d at 774-75 (citing Christine Asia Co. v. Ma, 718 F. App'x 20, 23 (2d Cir. 2017) (summary order) and

Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc., 367 F. Supp. 3d 16, 36-37 (S.D.N.Y. 2018)).

Fundamentally, Local 731's scienter argument is that because of Vivitrol's importance, Frates or somebody sufficiently senior at Alkermes <u>should have</u> known about the 2016 white paper or the meeting with state public health officials that occurred sometime between 2011 and 2014. But an allegation that an individual knew of or had access to information contradicting his public statements solely by virtue of his position in the company does not suffice. See <u>Gagnon</u>, 368 F. Supp. 3d at 775. Nor is an "allegation that a defendant merely ought to have known [about reports or statements containing contrary facts] . . . sufficient to allege recklessness." <u>In re Lululemon Sec. Litig.</u>, 14 F. Supp. 3d 553, 574 (S.D.N.Y. 2014) (citation and quotation marks omitted). In sum, such allegations are insufficient to raise a strong inference of scienter, especially absent allegations of a motive to commit fraud. See <u>Gagnon</u>, 368 F. Supp. 3d at 774 ("Where, as here, a plaintiff cannot make a showing of 'motive,' the 'strength of the circumstantial allegations must be correspondingly greater.'" (citation omitted)).

## CONCLUSION

For the foregoing reasons, Local 731's motion for partial reconsideration is denied. Because Local 731 has not demonstrated that reconsideration of its Section 10(b) and Rule 10b-5 claim is warranted, this Court also leaves its dismissal of the Section 20(a) claim untouched. The Clerk of Court is directed to terminate the motion pending at ECF No. 56 and mark this case as closed.

Dated: July 2, 2019
     New York, New York            SO ORDERED:

                                                     WILLIAM H. PAULEY III
                                                              U.S.D.J.